UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 00-47(1)(JRT)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPORT OF |
| | ) | MOTION TO CLARIFY TERM OF |
| v. | ) | SUPERVISED RELEASE AND FOR |
| | ) | EARLY DISCHARGE |
| SHAWN DOHMEN, | ) | |
| | ) | |
| Defendant. | ) | |

Shawn Dohmen is on federal supervised release as part of a sentence imposed by this Court in 2000. He is currently in Belgium serving a seven-year sentence imposed after he was convicted in absentia for a drug offense. Because it is unclear how the United States Probation Office will treat Mr. Dohmen's supervised release term while he is in foreign custody, Mr. Dohmen seeks clarification that his supervised release has been running continuously since his release from federal custody and will expire on January 1, 2006. In addition, Mr. Dohmen moves for early discharge from supervised release.

## FACTS

On November 30, 1999, Shawn Dohmen was arrested as he attempted to pick up a package of MDMA ("Ecstacy") in Minnesota. He immediately agreed to cooperate with authorities. Mr. Dohmen admitted that he had been recruited to travel to Europe to bring Ecstacy into the United States. Initially, Mr. Dohmen acted as a drug courier, smuggling drugs into the United States strapped to his body. He also coordinated other drug couriers. Later, Mr. Dohmen and a codefendant traveled to Amsterdam and mailed packages of the drug to his contacts in the United States. Mr. Dohmen was picking up one of these packages at the time of his arrest.

In February 1999, Mr. Dohmen was arrested in Belgium as a result of his smuggling activities. In February 2000, while he was actively working with law enforcement agents in the United States, he was convicted in absentia in Belgium and sentenced to nine years in prison.

Meanwhile on May 16, 2000, Mr. Dohmen pled guilty in this Court to distribution of MDMA. On March 29, 2001, this Court granted the government's motion for a downward departure under U.S.S.G. § 5K1.1 and sentenced Mr. Dohmen to 30 months in prison followed by a three-year term of supervised release. In addition, the Court recommended that Mr. Dohmen be permitted to serve his sentence in the Bureau of Prison's Intensive Confinement Program.

On January 2, 2003, Mr. Dohmen completed his prison sentence and began his three-year term of supervised release. Four days later, on January 6, 2003, as he met for the first time with his probation officer, he was arrested on a complaint based on a Belgian arrest warrant and seeking his extradition to Belgium. On March 20, 2003, a United States Magistrate Judge for the United States District Court for the District of Hawaii ordered Mr. Dohmen extradited.

Mr. Dohmen has been in continuous custody since January 6, 2003. It is unclear when he will be released.

The United States Probation Office has suggested informally to undersigned counsel that Mr. Dohmen's supervised release term is tolled during the duration of his foreign custody. Because that position is at odds with the governing statute, Mr. Dohmen now seeks an Order clarifying that his supervised release has been running since January

2, 2003 and, unless circumstances change, will expire on January 1, 2006. In addition, he moves for early discharge from supervised release.

## DISCUSSION

### I. MR. DOHMEN'S SUPERVISED RELEASE TERM BEGAN TO RUN ON JANUARY 2, 2003 AND, UNLESS CIRCUMSTANCES CHANGE, WILL EXPIRE THREE YEARS AFTER THAT DATE

By statute, supervised release begins immediately upon a person's release from imprisonment. 18 U.S.C. § 3624(e). It runs concurrently with any Federal, State, or local term of probation or supervised release or parole to which the person is subject. Congress specified only two circumstances in which the term of supervised release stops running before its expiration. First, under 18 U.S.C. § 3583(i), the term is tolled beyond its expiration date when a warrant is issued during the term alleging a violation of supervised release. Second, a term of supervised release is tolled "during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." 18 U.S.C. § 3624(e). This latter provision is relevant here.

"When Congress provides exceptions in a statute, it does not follow that courts have authority to create others." United States v. Johnson, 529 U.S. 53, 58 (2000) (interpreting different provision of § 3634(e)). Applying the rule of statutory construction "expressio unius est exclusio alterius" (the expression of one implicitly excludes others), the courts have rejected the notion that supervised release may be tolled for reasons not specified by Congress in the statute. For example, in United States v. Juan-Manuel, 222 F.3d 480, 488 (8th Cir. 2000), the Eighth Circuit held that Congress did not authorize sentencing courts to toll the running of a term of supervised release

following deportation and exclusion from the United States. Id. Accord United States v. Okoko, 365 F.3d 962, 967 (11th Cir. 2004) (by expressly providing for tolling of supervised release in certain circumstances, Congress indicated it did not intend for tolling during period of deportation); United States v. Williams, 369 F.3d 250, 252 (3d Cir. 2004) (Congress did not intend for supervised release to end when defendant deported).

Thus, Mr. Dohmen's term of supervised release continues to run unless one of the two statutory exceptions applies.

Congress made clear in § 3624(e) that supervised release is not tolled whenever a person is in custody. Only imprisonment "in connection with a conviction" acts to stop supervised release from running. For that reason, supervised release continues to run during periods of pretrial detention. See, e.g., United States v. Morales-Alejo, 193 F.3d 1102, 1105-06 (9th Cir. 1999) (pretrial detention is not imprisonment resulting from a conviction and, therefore, does not operate to toll a term of supervised release). Imprisonment in the custody of the Immigration and Naturalization Service pending deportation would similarly not toll a supervised release term because it is not in connection with a conviction.

Congress was also explicit about what type of conviction is necessary to toll supervised release. It must be "a conviction for a Federal, State, or local crime." Unless Mr. Dohmen's Belgian conviction constitutes a "Federal, State, or local crime," therefore, it does not operate to toll his term of supervised release.

In various contexts, the courts have made clear that the phrase "Federal, state, or local" does not encompass "foreign." In United States v. Perl, 584 F.2d 1316 (4th Cir.

1978), for example, the Court considered the defendant's claim that he had been entrapped to commit a crime by an agent of a foreign government. The Court rejected this as a basis for an entrapment defense, explaining:

> By government involvement, we mean involvement of federal, state or local law enforcement or their agents. . . . We do not mean involvement by agents of a foreign government.

Id. at 1321 n. 3 (citation omitted).

In United States v. Bin Laden, 132 F.Supp.2d 198 (S.D.N.Y. 2001), the defendants argued that their detention in a foreign jurisdiction at the federal government's request violated their right to prompt presentment before a magistrate. The Court, however, noted that the Supreme Court had limited the prompt presentment requirement to those defendants arrested and held on a federal charge by "any law enforcement officer – federal, state, or local." Id. at 208 n. 13. Based on this language, the Court concluded that the Supreme Court's holding "makes no reference to foreign law enforcement agencies." Id.

Finally, in Carmel v. Thomas, 510 F. Supp. 784 (S.D.N.Y. 1981), a prisoner brought a petition for a writ of habeas corpus, claiming that the Parole Commission had violated his rights by revoking his parole in part on the basis of a foreign conviction. The Court held that a foreign conviction could be considered as evidence that the petitioner had violated the parole condition that "You shall not violate any law." Id. at 791. At the same time, the Court observed that the petitioner would not forfeit street time as a result of his foreign conviction because this penalty only applies "in the case of a parolee who has been convicted of a Federal, State, or local crime." Id. at 792 n. 15.

All of these cases stand for the proposition that when Congress uses the phrase "Federal, state or local," it does not intend to include the separate category of "foreign." Mr. Dohmen is not "imprisoned in connection with a conviction for a Federal, State, or local crime," as required under 18 U.S.C. § 3624(e) to stop the running of his supervised release term. By explicitly delineating the circumstances under which the running of a term of supervised release would be tolled, Congress made clear that it did not intend the courts to toll a supervised release term in other circumstances not included in the statute. Absence from the United States does not toll a supervised release term. Imprisonment not in connection with a Federal, State, or local conviction does not toll a supervised release term. Accordingly, Mr. Dohmen's supervised release term continues to run and will expire on January 1, 2006.

## II. THIS COURT SHOULD GRANT MR. DOHMEN EARLY DISCHARGE FROM SUPERVISED RELEASE

Given his unexpected extradition to Belgium, Mr. Dohmen faces a far more severe punishment for his offense conduct than this Court contemplated or intended at the time it sentenced him. At the time of his sentencing, Mr. Dohmen understood only that he could not enter Belgium for a period of ten years. Presentence Report ¶ 38. He had no idea he had received a nine-year prison sentence in absentia or that he would be required to serve it following completion of his federal sentence.

As this Court may recall, prior to his sentencing, Mr. Dohmen provided substantial and valuable assistance to law enforcement officers in Florida. He was instrumental in the arrest of 10 significant ecstacy dealers and the seizure of over $300,000 in cash. Detective Michael DeMarcus, one of the law enforcement officers

with whom Mr. Dohmen worked closely, wrote a sentencing letter to the Court in which he stated:

> I have dealt with numerous confidential sources over the years however, I have never had a source that was more cooperative and responsible than Shawn Dohmen has been. In fact, this is the only time in my career that I have ever sat down and wrote a letter on behalf of a source or defendant. *I truly believe that Shawn has realized his past errors and is looking forward to atoning for his past mistakes.*

This Court sentenced Mr. Dohmen to 30 months in prison and recommended that the Bureau of Prisons permit him to serve his sentence in the intensive confinement, or boot camp, program. Although he met the eligibility criteria, he was excluded from the program as a result of erroneous information from the United States Attorney's Office for the Middle District of Florida concerning a non-existent detainer. As a result of this error, Mr. Dohmen ended up serving approximately 9 months more in prison than he would have had the Bureau of Prisons designated him directly to the intensive confinement program as this Court recommended.

While serving his prison sentence, Mr. Dohmen continued to display exemplary behavior. As the certificates attached to this memorandum attest, Mr. Dohmen received various awards and recognition of his accomplishments. He received an Award of Excellence for a perfect score in Drug Education. He received a Certificate of Recognition for being an outstanding tutor in the education program. He received the Administrator's Award and the Psychology Treatment Award. In addition, he completed the Drug Education Program and the Industrial Maintenance/Sanitation Program.

Now, Mr. Dohmen's punishment continues, as he remains in prison in Belgium. He has already served more than 2 ¼ years, and it is unclear how much more he will have to serve.

This Court has discretion to terminate a supervised release term and discharge the defendant "at any time after the expiration of one year of supervised release." 18 U.S.C. § 3583(e). As noted above, Mr. Dohmen has been on supervised release since January 2, 2003. Given Mr. Dohmen's exemplary conduct both before and since sentencing and the additional imprisonment he is now subject to, this Court should exercise its discretion and discharge him from further supervised release.

## CONCLUSION

For the foregoing reasons, this Court should enter an Order clarifying that Mr. Dohmen's supervised release term is not tolled during his imprisonment on a foreign conviction. In addition, this Court should terminate Mr. Dohmen's supervised release and discharge him from supervision.

Dated: May 2, 2005

Respectfully submitted,

ROBERT D. RICHMAN
____________________________
Attorney ID No. 226142

MARGULIES & RICHMAN plc
2520 Park Avenue South
Minneapolis, MN 55404